Cases 18-3934, 18-3937, and 18-4000. KCI USA Inc v. Healthcare Essentials Inc et al. Argument not to exceed 20 minutes per side. Mr. Reed, when you're prepared, you may proceed for the appellants. Good morning, Your Honors. My name is Orville Reed, and I, along with my partner, David Hilkert, briefed this matter on behalf of the Cabbage Firm. And co-counsel, Mr. Cornett, who is at the trial table with me today, and his associate, Melissa Kelly, briefed the issues on behalf of the individual defendants, or interested parties, rather, the individual lawyers. And, Your Honor, it was decided because of the constraints of time that I would make the argument today. I have asked the Court to allow me five minutes in rebuttal. Thank you, Your Honors. We are here today to ask this Court to allow the individual lawyers at Cabbage, in the Cabbage Firm, to reclaim the good names and reputations which they lost as a result of the decision made by Judge Pearson in this case. It is clear that people get fooled and get duped every day. Unless we had the ability to operate with hindsight, as none of us do because we are mere mortals and not gods, there will be the Bernie Madoffs, there will be the Elizabeth Holmes, and there will be countless other progeny of Mr. Ponzi. We live in the murky world, trying to figure things out as we walk through life in the blur of the moment. And that's precisely an issue, I think, that the Court has to address here. The lawyers in this case undertook the representation of HEI, healthcare essentials. And they did so because of the fact they had been sued on March 12, 2014, by a large corporation, KCI, Kinetics Concepts, Inc., out of San Antonio, Texas. KCI is probably the largest manufacturer of negative wound vac therapy in the country. They came with a story, and the story seemed to make sense. The story was that we are competitors of KCI, and what we do is we are able to locate used vacs or some used vacs on eBay. And we sell them to healthcare institutions or we lease them to healthcare institutions just as KCI does, only we do it much cheaper. They also came with a story that not only do we have a business that is based upon a secondary market, namely eBay, but we come here with a story that says KCI wanted to buy us out. KCI wanted to partner with us, but in fact we couldn't agree upon a price, they wouldn't pay us what we wanted, and now they're trying to put us out of business through litigation. And, in fact, they were able to produce emails that said that very thing. So, like the folks that I've described before, the Elizabeth Holmes and the Bernie Madoffs and the Charlie Ponzi progeny, they came with a story, and they came with a story that made sense. In fact, if you look on eBay, you will find that vacs made by, manufactured by KCI and or manufactured by Smith and Nephews are available on eBay. It's also true, as we learned during the course of the case, notwithstanding denials made by KCI during the case, that they don't sell, they don't sell vacs that might become available on eBay. They only lease them to healthcare institutions, skilled nursing facilities, hospitals, things like that. In fact, we learned that about 1,000 a year are sold, not necessarily in the United States, but throughout the world and are made available also on eBay. So, this is the story that comes to us when we undertake the representation of Mr. Ryan Tenenbaugh and his brother Colin Tenenbaugh and their company, which in fact is a small company. What happens over the course of the case is that there are a lot of discovery disputes. There's a lot of push and shove back and forth, a lot of unhappiness over whether or not people have complied with discovery or not. There is a moment that occurs in January of 2016, and that is when Magistrate William Hoffman of the Northern District conducts a hearing. Actually, the hearing was called because of the fact that KCI had asked for sanctions. But again, in that hearing, the representations were made that we have produced what we have, we've given you what you've asked for, we have no more to give you. There's pushback. And in the end of the day, after all that happens, the parties agree that they should go back to their principles and do further discovery to see whether or not there is something that hasn't been produced. And there is an agreement on the record to that effect. But wasn't there a statement by Mr. Atsu at that hearing after the court said with respect to the 35, which were 35 particular VACs, do you have anything you haven't produced yet? And Mr. Atsu says, no, Your Honor, we have produced everything to them. You've produced everything. Yes, Your Honor. Yes, Your Honor. That did happen. And Your Honor, again, those are representations that are consistent with what the client told Mr. Atsu. And as they saw, as the conversation ensued, it was determined that maybe we should go back and talk to the client. With respect to supplementing? Exactly, Your Honor. Exactly. With respect to, so here Mr. Razor says, we believe we've done everything you asked us to do with all of the VACs, all of the VACs on the list. Our client has continued to acquire inventory in the ordinary course of business and we absolutely positively intend to supplement discovery as it happens. So I thought that was dealing with additional beyond the 35 VACs. I think they're all tied together, Your Honor. That's the way I've read that discourse. That in fact there was concern raised that in fact things were out there that hadn't been accounted for in addition to the fact that they had acquired VACs since the lawsuit had been filed on an ongoing basis. And I think that was the purpose of the agreement that was made and everybody left thinking that was going to happen. Mr. Reed, you're representing the firm and the individuals, is that right? I'm speaking for them, Your Honor, today. I'm conducting the argument. In fact, the briefs were submitted by... Is that something different than... No, Your Honor, it's not. I don't mean... I just wanted to point out that... Okay. It seems to me that there are two questions. We've read all of this stuff, as complicated as it is. One is, if you get to the merits of this, did the attorneys do enough to ascertain whether or not what they were being told by their clients, which turned out ultimately to be false, in order to be able to make the representations they made to the court? So that's what I'll say is sort of the merits question of the sanctions. Agreed. One of your arguments is that the individual attorneys didn't have an opportunity that the judge should have given them to be able to explain away their actions, essentially. Is that right? That is right. You're not making the same argument on behalf of the firm, are you? No, Your Honor, I'm not. No, because we were apprised at the time the motion was filed that it was directed against Kavich. They didn't add the individuals until way, way later. Your Honor, it came in a footnote. I'm just asking you, as one member of the panel, it would be helpful to me if instead of all this background that we're largely familiar with, if you would go right to the question of did they have an adequate opportunity to respond? All right, Your Honor. And, Your Honor, there's no question about the fact that the individual lawyers were not notified until the footnote that appeared in the reply brief that they were the object of the sanction motion. Up until then, it appeared as though the motion, sanctions motion, was directed only against the firm. And so to your point, Your Honor, I represented the firm at that time. We assumed the motion was against the firm. We moved to strike the footnote. The court denied that motion and proceeded on to make the decision. Did they have an opportunity, Your Honor? They did file affidavits because, in fact, they were the ones who were generally familiar with the operative facts. They did file affidavits. But I think, Your Honor, basically it is contrary to fundamental fairness to find yourself in a reply brief, only in a reply brief, as the object of a motion for sanctions. It's not that they didn't have a chance to say something. They did. But I just think it is so, may I use the phrase, un-American in our judicial process. Would they have filed something after this footnote in the reply brief? Well, Your Honor, we moved to strike the reply, excuse me, we moved to strike the footnote in the reply brief. And again, get the court to focus, that motion was denied by the trial court. And so . . . So could they have filed something else other than a motion to strike? Would they have filed something else, Your Honor? Could they have filed something else? We didn't do it, Your Honor. It didn't happen. It didn't happen. But you weren't prohibited. The judge didn't say you may not file anything. We did not ask to file anything, Your Honor, after we moved to strike the footnote. I'm curious, why would the firm be liable if the individual attorneys hadn't acted wrongfully? Why wouldn't the firm be liable? Why would the firm be liable if the individual attorneys hadn't acted improperly? So in other words, if you knew the firm was going to be subject possibly to sanctions, wouldn't it be because of the individual attorney's actions? Of course, Your Honor. Of course. It was only because of what those lawyers did in the representation of HEI and Ryan Tenenbaum and Colin Tenenbaum, Your Honor, that gave rise to the original motion. That's correct. So it was in the firm's interest to protect itself, assuming that the firm could be liable for its attorney's actions. That's correct, Your Honor. It would be in the firm's interest to produce everything that would exonerate the attorneys who were people working at the firm. That is absolutely correct, Your Honor. So what could you have presented that you did not present that you also, for some reason, chose not to present after the footnote? Well, Your Honor, I think that if, in fact, the individual lawyers had known that they were the object, they may have sought separate counsel. They may have asked to file experts. And, Your Honor, apart from – in terms of the substance – Would the firm be interested in doing all of that? Yes, Your Honor. We did. And the separate counsel here, you are arguing for both the firm and the attorneys now, so – Yes, Your Honor. Your Honor, there's no question that we put our best foot forward in responding to the motion. And that required us to – and that required us to, of course, to tap into what they knew and what their positions were relative to the various charges that were being made. And they filed affidavits accordingly. That is absolutely correct, Your Honor. And they were still working at the firm during that time? Absolutely, Your Honor. And still are. But that seems to me that it really harms your ultimate argument that the individuals didn't have a chance to respond. Because if the firm acts only through the individuals, you've conceded the firm had an opportunity to respond, the individuals cooperated with the firm so that the firm didn't get sanctioned, right? Correct, Your Honor. So we're left to speculate then as to – even if we buy into your un-American argument, whatever that means – that we're left to speculate about what the individuals would have done had they known that they were individually subject to sanctions other than in this footnote. Because reading this, other than saying, well, gosh, this is unfair, you don't say what they would have done had they been given an opportunity. You claim they should have been given that they weren't.  I understand that. And I will say this, that when we filed our defense, our opposition to the motion, the people that I'm talking about, the individual lawyers, were, of course, pivotal players in making those – in making the affidavits and making the arguments because they knew the facts. And so perhaps what we should be focused upon is the second aspect of the due process argument. I think you've cut to the quick on that, Your Honor. And that is the issue of whether or not there should have been an evidentiary hearing granted by the judge. And I would respectfully submit that there should have been an evidentiary hearing. Now, I'm well aware of the fact that there's case law that speaks to the issue of whether or not there has to be an evidentiary issue, an evidentiary hearing in every single case involving sanctions. And I know the law is not that every single case has to – arises to the level of requiring an evidentiary hearing. Let me help you out again, cutting further to this. The real argument, as I understand it, is KCI got to do that, at least in a fashion. There you go, Your Honor. And then the judge relied upon that while at the same time denying your clients the same opportunity that KCI had or took advantage of earlier. That's correct, Your Honor. But it still begs the question about, all right, you get a hearing. This would be a lot more persuasive if we had some sort of sense as to what are you going to do during a hearing that you didn't already do, given the fact it looks like you had the opportunity to do it through the law firm. Well, okay, Your Honor. Let me – true. You just agreed with all that? No, I don't agree. It's true that we did everything we could do. But, Your Honor, what I want to focus on is the issue of whether or not there should have been an evidentiary hearing to test the substance and the contents of the motion for sanctions filed by KCI. The motion contained excerpts and shards of evidence from certain witnesses. For example, Rose Edger. She was a pivotal player in the court's determination that – of the most reprehensible finding, and that is that Mr. Atsu engaged in the fabrication of evidence. There's nothing that could be more harmful to a lawyer or to his career or to his aspirations than to have a judge say you engaged in the practice of fabricating misleading information and evidence. So you're saying the motion had, to use your word, shards of evidence. That's correct, Your Honor. But why didn't you file a response to the motion with your own shards of evidence? Well, Your Honor, first of all, we were not present at – we explained what we could do, Your Honor. But, Your Honor, we should have had the opportunity to put these people to the test. Rose Edger was not – we were not present when she was deposed. She was deposed after we had left the case, and she was deposed by counsel for KCI. We were not part of that. We were not privy to that. We were not invited to that. And then they took bits and pieces of the deposition and submitted them to the court. Let's just stop right there for a second so that I make sure I understand. Sure. What KCI has said, and I'm sure their counsel is going to say this morning, is that Kavich knew they were subject to being sanctioned and that they were aware of these various court proceedings, or they could have been aware, basically. Now, you're going one step further. You're saying that there was a deposition. Was there any way in which either the law firm or the individuals knew of or should have known about that deposition, ignoring even whether they would have had the right to participate had they shown up? Correct, Your Honor. Right. And the answer is no, we did not know that. We did not know about the second deposition of Rose Edger, nor did we participate in it. And that was then relied upon, at least in part, by Judge Pearson. That's correct, Your Honor. All right. I got it. Judge Pearson relied on the evidence that was induced at a show-cause hearing that was not noticed to the law firm and to the Kavich attorneys. Is that right? That is correct, Your Honor. And he used the evidence at the show-cause hearing against both the law firm and the individual attorneys in the session sanctions, even though they were not given notice or given an opportunity to participate. Is that right? That's correct, Your Honor. That is correct. All right. Isn't that your best argument here? It's a great argument, Your Honor. We've made that. I don't know why you're not arguing it. We haven't got to it yet, Your Honor. Well, you're out of time. That's one of the things. I am out of time. Yes. But I think that's the rub of the case here, that the law firm knew that they were subject to a motion for sanctions. The individual defendants, the motion wasn't even directed to them, so it's not even in the ballpark. But then the show-cause hearing, which is the evidentiary hearing, was only noticed to the defendants and not the attorneys in the law firm, and therefore they did not participate, they did not cross-examine, and that evidence was used against them. Correct. In fact, Your Honor, it is correct, but I want to add one thing. You can argue against me if you want. No, why would I do that, Your Honor? No, it makes eminent sense, and it's exactly where we stand on this. I want to add one thing in the interest of full disclosure, and that is we were aware that there was going to be a hearing addressing this issue. Apparently there was something that was said that led one of our attorneys to appreciate the fact that there was going to be an attack against. You clearly were aware because you filed a briefcase. That's right, Your Honor. You filed a brief in the morning. That's my point, Your Honor. I am going beyond what happened at the hearing that you knew of, whether that was adequate or not is a different question. There were things outside the hearing that you didn't know about that were presented at and relied upon at the hearing. That's correct, Your Honor. That is absolutely correct. You knew about the hearing, and you could have gone to the hearing. We could have gone to the hearing. There was no requirement that we go to the hearing. There was no requirement that we went to the hearing, Your Honor, and at that point we were representing no one, but someone got an inkling. We filed a brief. You're not even part of the hearing. I mean, I guess you could go as a spectator and sit in the back, but you're not a party to the show-cause hearing because it wasn't noticed against you, and I don't think you would have standing to cross-examine witnesses or anything else. But, okay, be that as it may. Well, there weren't any witnesses. This is all argument. It was all argument, Your Honor. It was all argument. It was a private audience. Pardon me. This is all argument by KCI's attorney about Kavich and the individual lawyers, even though the subject of the hearing was the two principal defendants in the case. The ten of hearts. Colin and Ryan. Correct, Your Honor. All right. Ben, in terms of the imposition of sanctions against the firm and the attorney, was there a motion for sanctions against the – that she was not going to address the issue of the lawyers' sanctionability? Is that correct? Your Honor, the entry that was prepared was that . . . Her discussion at that show-cause hearing. I thought she said the hearing was not addressing the Kavich lawyers or the Kavich firm. Your Honor, the . . . I'm wrong about that. No, I'm sorry, Your Honor. I'm at the wrong hearing. But you're absolutely right. That happened on . . . She specifically said she was leaving that to another day. She did. She did. So then is there a motion for sanctions against the firm and or the attorneys? That followed a week later, Your Honor. Okay. So then you . . . Wasn't it against the attorneys as well? No, Your Honor. It wasn't until the reply brief. There was never a motion for sanctions. No, that's correct, Your Honor. Not until the reply brief is it established. Right, and I used the word or so you could have answered that. I apologize, Your Honor. Right. So the motion, which is a written motion, correct . . . Correct. . . . is against the Kavich firm attorneys for sanctions. Yes. Correct? The written motion was . . . Tell me you . . . this is your record. Yes, Your Honor. The written motion, Your Honor, was addressed to the Kavich firm. Okay, and the Kavich firm responds. And the Kavich firm responds. Okay, and so at that point, there's equality in terms of the presentation to the Judge Pearson, right? You both are filing . . . I wouldn't say equality, Your Honor, because Mr. Chris has just had a four-hour diatribe harangue that was an attack upon our clients. Right, and you . . . I assume you pointed that out in your response to the motion for sanctions. Yes, Your Honor. And you could have presented written evidence in addition to asking for an oral hearing, right? We asked for an evidentiary hearing, Your Honor. That's what we asked for. You're using the word evidentiary hearing for an oral hearing, correct? Well, Your Honor, we wanted to present evidence. You wanted to present evidence, but you could present evidence in written form, correct? And we did it by way of affidavits, Your Honor. We did. Okay. Correct. We . . . I know you saved five minutes for rebuttal. If anyone has any more questions, then we'll give you your rebuttal time and hear from the other side. Thank you very much, Your Honors. May it please the Court. I'm Tom Crist, and I represent KCI USA. Because of most of the recitation of the facts and most of the recitation of the record that were just offered are entirely incorrect per the Court's orders, I'd like to go directly to the heart of the two motions that were filed and the heat . . . and the hearing that was had that was adverse to the defendants. Judge Griffin, you asked and focused in on an important issue. I can back up a few months before those two hearings and two motions. KCI, in the beginning of 2017, had filed a motion to show cause against the defendants that largely related to the defendants' failure to produce evidence in the case, respond to discovery. There was a long period of stay in 2017, upon the defendants' motion, due to related criminal cases against two of the defendants' principals. So, we moved forward until June of 2017 and had a telephone conference with defendants' counsel. I was on the call, as was the Cavish Law Firm, which is referenced in the Court's orders. And, I asked the Court to set a hearing on a motion for case terminating sanctions against the defendants and shared with the Court information that KCI had recently discovered from a hard drive that had been secreted from KCI throughout the entire litigation. Now, by this time, Cavish is already out. By that time, Cavish was out. Inspired by their client and the client has new counsel. That's right. And, the Court had invited them to the call because Cavish was still in the process of trying to explain activity that the Court ultimately determined was sanctioned. So, why was it appropriate for Judge Pearson to rely upon what happened at that hearing when there was no motion against Cavish, there was no motion against the attorneys, they're not a party, I mean, I know you can say they could have come had they wanted to, but what was their obligation to come? Simply, the Court didn't rely on the testimony that was offered at that hearing. The motion for sanctions came later. Now, this sequence is very important. In June, the Court set us for an August hearing on KCI's motion for case terminating sanctions against the defendants. There's no mention of Cavish in that motion. There's no remedy asked by KCI adverse to Cavish or the Cavish lawyers at all. Because you're saying this was a motion for case terminating sanctions against the defendants, meaning HEI. The party, yes. And the two Tenenbaum defendants. That's right. Against several defendants, actual parties. So you're saying in neither of Judge Pearson's orders here that she references back to that hearing in question? Again, I can clarify. One moment, because this is very important. The motion for sanctions against Cavish, the omnibus motion, stood on its own, meaning every bit of evidence that is referred to or referenced by the Court in any of her orders related to sanctions against Cavish is found attached to KCI's motion for sanctions against Cavish. A small amount of it was also mentioned at the other hearing. So when we had our June conference with the Court on which Cavish was present and the Court set us for an August hearing on case terminating sanctions against the defendants, the Court also instructed us, let her know, let the Court know, if we discover anything else that would be important to the Court, specifically on the hard drive that Cavish, the Cavish lawyers, and the defendants had secreted from us. So in preparing for that August hearing, we found direct evidence of Cavish's involvement in covering up their client's criminal enterprise. So we filed a bench brief. The vast majority of the bench brief relates to case terminating sanctions against the defendants. A whole section of that brief identifies clear evidence, per the Court's later orders, that Cavish had created evidence that the lawyers had committed multiple frauds on the Court. We attached affidavits that the Cavish firm had prepared that were knowingly false. And we included that evidence and made clear in the bench brief, this is our effort to make you, Judge, understand what we have found on this additional disk and why it's important. We are still not asking for a remedy against Cavish at the hearing on case terminating sanctions. Cavish filed an extensive brief in response with affidavits of counsel, with their citation to deposition testimony, and legal argument, and wrote that we haven't done anything wrong and we stand ready to prove it. The Court, for reasons unrelated to our case, continued our hearing on case terminating sanctions against the defendants until the first week of November, November 9 of 2017. Cavish filed a second brief during our drive to the courthouse that, again, argued and provided testimony, supporting their position they had done nothing wrong and, again, offering to, at any point, explain themselves. They didn't come to the hearing. Were they supposed to come as a spectator? You know, Your Honor, it's an interesting question. I think that if someone filed a bench brief and indicated that I had broken the law, that I... If I'm mentioned in somebody's brief but I'm not a party to the case, I don't think I would have standing to participate at the hearing. Just because you mention a non-party in a brief doesn't give them notice that they may be financially liable as a result of a hearing that they're not involved in. And, importantly, KCI sought no remedy against the Cavish firm at that hearing, none. I know it. Then the judge imposes one. That's what I find incredible. With respect, that is not what happened. Per the court's orders, per the court's explanation. What happened at that hearing was I stood at a lectern and I flipped through 10 years of exhibits that had been secreted from KCI, the vast majority of which related only to the defendants. However, some of them were email strings between the defendants and the Cavish lawyers and the Cavish law firm. So I introduced evidence adverse to the defendants while seeking a remedy against the defendants that necessarily implicated Cavish in a few instances. A week later... At that hearing, you were seeking only sanctions of case termination against the defendants, and the district judge said specifically at that hearing, we are not considering sanctions against Cavish. Is that correct? That's correct. At the hearing and after, the court indicated she did nothing to evaluate attorney misconduct or sanctions related to attorneys or law firms at that hearing. A week later, eight days later, KCI filed a completely separate motion that was a motion for sanctions with respect to attorneys. Completely separate motion. When you say with respect to attorneys, was it a motion for sanctions against Cavish the firm or particular attorneys? It's actually both. The title of the motion is motion for sanctions against the Cavish law firm. The entire body of the motion... The title is against the law firm. Title is adverse to the law firm. Okay. All right. So it seems to me it's against the law firm. The entirety of the argument, the entirety of the evidence submitted, is directed at the individuals by name, including communications by them. You intended to make the lawyers individually liable, these three lawyers. Shouldn't you have sought sanctions against the three individual lawyers and the firm instead of just calling it against the firm? We should have entitled the motion differently. Well, forget it. They're separate entities, aren't they? I mean, the law firm is a PC or a partnership or something. The lawyers, you're asking for judgment individually against them. They're individuals. I mean, they're not the same entity, right? Understood. Well, since we filed a motion against the law firm and we referenced individuals, it actually ought to be considered to be a motion against both the law firm and the individuals because we referenced them. I don't think so. With all due respect, Your Honor, we did a lot more than reference. This can be made a lot easier. Obviously, if you're seeking sanctions against the firm, you have to talk about what the individual members of the firm did because that's how the firm acts. But what did you seek in relief at the end of that motion? Sanctions against the firm or sanctions also against the individuals? Both, and as clarified in our reply brief. In your relief? Your relief section of your motion, the first motion? We argue that the only way you can sanction. What does the relief section say, the final line? I believe the final line asks for sanctions against the law firm. Okay. So, I mean, we understand that then you threw in this request for sanctions against the individuals in a reply brief. But, you know, we've got lots of cases that say you can't expand the scope of what you're asking for in reply briefs. So the mere fact that they showed up through a brief, I still can't get by this concept that you were proceeding against the firm only and then you end up at the end for sanctions against the individuals. How do you explain? How do we justify that? Per what the court determined here below is that because all of our allegations in the meat of all of our briefs mentioning sanctions, asking for sanctions, were very clear about the misconduct that were the basis of the motion for sanctions. It was all directed in great detail against the individuals with the argument that the law firm should be liable for failing to supervise and control the individuals and for the withdrawal that was done without appropriate notice to the court. So all of the arguments, starting with the bench brief, all of the arguments in the motion for sanctions, all relate to the meat of the three individuals, Razor, Atzu, and Weiss. Have you found any case that comes even close to awarding sanctions against somebody against whom sanctions was not sought? No, nor have I looked for one because our position is that's not what happened here. I mean, again, let's presume that, as the appellant has argued, that despite the content of the briefs that they didn't understand that until the reply brief that they were one of the focuses of the motion for sanctions. Well, they clearly were a focus in the sense that their actions were what were the basis of your request for sanctions against the firm. But I would just say, I'm not saying I would have done the same thing they did, but looking at it, it just looks like for whatever reason you made the determination you were going to go after the firm and not the individuals for things that the individuals did. That's what happened, isn't it, at least at that phase? Again, not based on the hard content of the briefs that we cited that the court relied upon in her order. You know, we see this in other contexts all the time, that you may have a General Motors truck driver who gets in an accident and kills somebody. But rather than sue John Jones, the truck driver, the plaintiff sues General Motors under respondeat superior theory, also thinking in the deep pocket, I'm going to get a bigger judgment if I go against the employer rather than the individual. Well, John Jones is all the way through the complaint because John Jones is the guy that drove the truck, did everything wrong, but he can't get a judgment against him individually because guess what? He hasn't been sued. And he might be part and parcel of the whole thing, but guess what? He's not sued, he's not liable. And usually the same thing applies to motions. If you file a motion against somebody and you're going against the employer rather than the employee, well, maybe you'll get it through the employer, but the employee is not on the hook. I mean, isn't the same principle here? You made a choice. I certainly understand the concept. Well, the concept is accurate, isn't it? I mean, you can sue the employer and not sue the employee, and the employee, if you don't sue him, is not liable, right? That is true. Even though he did everything wrong. Sure. And that's exactly what you've got here, isn't it? I don't think it is at all. Based upon the content of the briefs and the content of the court's orders. So the court below very clearly found that it was illogical for Cabbage to make the argument that we knew you were aiming at the firm but not at us, which is an argument they've made periodically going one way or the other. Sometimes they state we thought it was the lawyers who should be concerned. Other times we thought that it was the law firm. So the content of all of the briefs, all of them, focus on those three individuals, and the court made specific findings about each of the individuals. The court also has inherent authority to sanction parties without a motion or to sanction additional parties. Well, attorneys as well. The court has broad inherent authority to govern discovery and to sanction law firms or parties. Not without notice. And there was plenty of notice based on the content of the brief for the court. When did the judge give independent notice to the individuals that she was considering sanctioning them, other than in the final order where the horses left the barn? Repeatedly, both the magistrate judge and the district court. Back in 2015, we filed two motions for sanctions. At both hearings, Cabbage appeared. At both hearings, the court warned Cabbage and the Cabbage of lawyers, specifically the three gentlemen who were ultimately sanctioned, that they could be sanctioned under Rule 11, they could be sanctioned and found jointly and severally liable for KCI's attorney's fees, that if any of the statements they were making were proven later to be false, that the court would sanction them, those individuals, Razor, Otso, and Weiss. No mention of law firm. The court in January of 2016 set aside our motion for sanctions and again admonished the individual lawyers the same way, having filed briefs and having argued orally. The district court first saw the parties in April of 2016 upon the law firm and the lawyer's motion for leave to withdraw. We were back in front of the court in August of that same year where the court had presided over a specific hearing at which she questioned the individual lawyers and the law firm, Cabbage and the three ultimately sanctioned lawyers, about their improper withdrawal, about their lack of candor to the court, about their refusal to give the court or anyone notice, and warned them. All of this is then superseded by her statement on November 9th or whatever that date was that the question of sanctions against the lawyers is left for another day. That's right. It was not considered in the day in which the court... I want to change the focus just a little bit so that I don't lose the opportunity to ask you this question if we run out of time. I want you to assume hypothetically for a second that we send back the question of the sanction order against the individuals for any of the reasons that we've talked about. I know you disagree with that. I'm not asking you to agree with it. I just want you to assume that to be the case for purposes of my hypothetical. At that point, it seems odd to me that we would affirm the award of sanctions against the firm given that the basis of the sanctions against the firm are the actions of the individual, which we're asking her to go back and reconsider. So at least to have some sort of logic here or parallelism, if that's the right way to look at it, would it make sense to you that if we, in your mind, mistakenly send this back for the individuals that we would send the firm back at the same time? Or is there a principle basis to affirm what she did against the firm but send it back as to the individuals? It's an interesting question. I think that the court specifically found that the lawyers and law firm withdrew under false pretenses, did not correct the record, and specifically made that finding against the individuals and the law firm at a hearing that occurred a year prior to our motion for sanctions. So I think there's ample grounds. I'm just trying to figure out what did the law firm do that was separate and independent from what the lawyers that allegedly committed misconduct do? Sure. Per some citations of the court, failed to supervise their lawyers. And there was testimony offered by the cabbage. But let's go to that for a second. I mean, that makes logical sense. But why would it make sense to say the firm continues to be liable for failure to supervise if when there is a testing of the allegations against the individual, you find that they didn't do anything wrong? Then it doesn't make any sense to leave the sanctions against the firm for failing to supervise something that wasn't wrong. Understood. Is there some other way then to withstand the attack against the firm if, in fact, we send back the question to the individuals? The only specific reference to the court is that once the lawyers at Kavich have admitted that they became aware of their client's criminal enterprise, they explain to the court on the record that the firm internally evaluated how they would withdraw, and the law firm made a decision that they would withdraw without correcting the record or giving notice or providing the disk that they had secreted for a long period of time. Does the record show when you say the law firm made a decision, does the record show how the law firm made the decision? Was it a supervising partner or was it a firm committee? Does the record show any of this? It does. At the August of 2016 hearing, the Kavich lawyers explained that the decision was made by their management in conjunction with their general counsel who was the one speaking and who explained that to the court. That is actually the time frame in which the court determined attorney fee liability for the lawyers and the law firm, the time between the statements leading up to the withdrawal and then the time when KCI ultimately received the hard drive of most of the defendant's data that had been secreted. The only way that makes sense, at least to me, is to say that the amount of sanctions against the law firm would be the same regardless of whether the accusations against the individual stand or not upon further reflection because of the one instance at the end where they withdrew and didn't act properly. So if you accept the premise that that was worth $300,000, then I understand that you're absolutely right. But we don't know whether the judge would have sanctioned the firm in that full amount had the individuals established to her satisfaction, as fanciful as that may be, that they didn't do all the other things they were accused of. Is that a fair statement? It could be. I think there's a lot of twists there that belie the court's findings that are specifically written about the law firm and specifically written about the lawyers. I do understand what you're saying, but the duty of candor that's owed to the court was one of the court's main focuses here, and the court found that the entire withdrawal of the firm and its counsel was done wrongfully in a way that harmed KCI for a period of months and caused them to spend nearly three-quarters of a million dollars. As a firm, as an entity, whether it's a partnership or a PC or whatever it is, does a firm owe a separate duty of candor to a court as opposed to that duty that we all would acknowledge is owed by the lawyers who work for the firm that are appearing before the court? Here, I don't believe we've looked for a case that specifically addresses that. However, you do have a law firm that has stated through its management that it made a decision to withdraw armed with certain information. Obviously, those decisions have to be made by people. Those people are lawyers as well. Interestingly enough, they made the decision based upon advice of counsel. Yes. Which they're now being sanctioned. Yes. All right. There was a motion to supplement the record with the ex-party filings of Kavich. Have you seen the ex-party filings? Do you know what is in those ex-party filings? We've not seen them. We only know what the court has written. The court determined they were insufficient. What the district court wrote. District court did. You have not had access at any time to the ex-party filings? No. We will stand on our briefs with respect to the cross-appeal. Our position is essentially the court apportioned twice, which is inconsistent with the Goodyear case. Once apportioned, the lawyer's responsibility for fees, which was substantially less than she found the defendants liable for, it's a single apportionment permitted under Rule 37. And then after finding that the attorneys were the but-for cause of $705,000 of fees that were actually caused using that language and could not have been caused but for their misconduct, the court again diminished a second time, an apportioned a second time, which we contend is an abuse of discretion. Very limited question. Thank you. Thank you. Your Honor, you asked whether there were any case law to establish the proposition that a person who has not been told he's going to get sanctioned ends up getting sanctioned. And, Your Honor, I think there's a case that approximates what you're talking about, and that's the case that we cited, TAPICO, T-H-A-B-I-C-O, versus Kiewit Overseas Resources. And it's out of the Southern District of Texas, and it was decided, I believe, post Hager. And in that case, the court found that the client was responsible for all of the fees because of its conduct in trying to do an end run around form shopping and so on and so forth. Then it also said, but even though the plaintiff didn't ask or the defendant did not ask for damages against the lawyers, we find the lawyers' conduct assisted them. And we would hold them 25%, but since you didn't ask for sanctions, you only get 75% of the sanctions. So there is a case, Your Honor, that approximates a scenario that you've just talked about. And, Your Honor, on your hypothetical, what would we do if we sent back the issue of the individual attorneys? Your Honor, again, to that point, what we think you should do in this case is reverse the finding as to the firm because they were not assigned or we were cited for three violations, three specific violations, under 26G, 37B2C, and also under the 1928 U.S.C. 1927. And under those cases, only the signer, only an individual lawyer can be held responsible. Those are the only bases upon which the court granted sanctions, and Cabbage cannot be liable under any scenario there. So the court should reverse as to Cabbage. Is that Rule 11, and hasn't Rule 11 been amended? Rule 11 was amended, Your Honor, and Rule 11 is unique in that respect. Okay, but that allows the law firm to be? Absolutely, it does, under Rule 11. Correct, Your Honor. Are you saying she didn't sanction the firm under Rule 11? She did not. 26G and 37. There was one other issue that was raised here. Oh, the Redding decision. They said that the Redding decision for the proposition that they should pay all the fees. Actually, Redding stands for the proposition that the guilty party, the fraudulent party, should pay for all the fees. And in the Redding case, a case out of the District Court of Montana, again, post-Hager, in that case, it was just the lawyers who engaged in the fraud. The plaintiff had no idea what was going on. They were using her to cover up the prior malpractice and the prior conflict of interest, and the court said, you're liable for everything. And that was right, and it's consistent with what the court did in Hager. In the Hager decision, the court found that 80% of the fees should be paid by the Goodyear team, which consisted of Goodyear, its in-house counsel, as well as its outside regional director. The local counsel was only hit for 20%. The same thing happened here. The court is looking for gradations of involvement, and in this case, there is no question that the fraudulent party threw out all of this. He is not God-fearing. He is not judge-fearing. He is Ryan Tenenbaum, who acted in defiance of the law at all times. He's the person who caused this. We got pulled along in its wake. We should be held, and our lawyers should be held responsible for no damages. Thank you very much, Your Honors. We are very appreciative of your time. Thank you both for your argument, and the case will be submitted, and the court will take a brief recess. We'll return very shortly.